IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| BRUCE WAYNE HUEY, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL NO. 7:12-CV-0097-HL-TQL |
| VS. : | |
| : | |
| Warden WILLIAM DANFORTH, et. al., : | |
| : | |
| Defendants. : | |

## ORDER & RECOMMENDATION

Plaintiff **BRUCE WAYNE HUEY**, an inmate currently confined at the Coffee County Correctional Facility, filed this *pro se* civil rights action under 42 U.S.C. § 1983 and is proceeding *in forma pauperis*.[1]  Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," the district court is required to conduct a preliminary screening of his Complaint. See 28 U.S.C. § 1915A(a).  Having now done so, the undersigned finds that Plaintiff's allegations may support a claim for relief against Defendants Cecilia Linder and Deputy Warden Ted Philbin.  It is **RECOMMENDED**, however, that all other claims and Defendants be **DISMISSED** without prejudice pursuant to 28 U.S.C. §1915A(b)(1).

## STANDARD OF REVIEW

When conducting a preliminary review under § 1915A, the district court must accept all factual allegations in the Complaint as true. Brown v. Johnson, 387 F.3d 1344, 1347 (11th Cir. 2004).  Pro se pleadings, like the one in this case, are also "held to a less stringent standard than

---

[1] Plaintiff is of course still obligated to pay the full filing fee, as previously directed. See Order, August 10, 2012 (ECF No. 7).

1

pleadings drafted by attorneys" and must be liberally construed. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Nonetheless, a district court is still required dismiss a prisoner complaint after the initial review if the complaint (1) "is frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief.@28 U.S.C. §1915A(b); see also 28 U.S.C. §1915(2)(B) (requiring the same of prisoners proceeding *in forma pauperis*).

A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). The "factual allegations must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." Id. In other words, the complaint must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. Id. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

To state a claim for relief under § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. See Chappell v. Rich, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming court's dismissal of a ▪ 1983 complaint because factual allegations were insufficient to support alleged constitutional violation); see also 28 U.S.C. § 1915A(b) (dictating that a complaint, or any portion thereof, that does not meet standard in ▪ 1915A Ashall@be dismissed).

**STATEMENT AND ANALYSIS OF CLAIMS**

Through the present action, Plaintiff Bruce Wayne Huey alleges that officials at Valdosta State Prison (1) unlawfully interfered with his incoming mail and (2) retaliated against him for

exercising his First Amendment right to free speech.

Plaintiff's Complaint first alleges that the mail officer at Valdosta State Prison, Defendant Cecilia Linder, habitually held and interfered with Plaintiff's incoming legal mail. Plaintiff claims that, on more than one occasion, he received his mail a week or more after the postmarked date, and that, on at least two occasions, Defendant Linder delayed Plaintiff's receipt of a state court order. However, Plaintiff apparently suffered no harm as a result of these delays. The court orders were both dismissals of petitions he had filed, and Plaintiff did not wish to appeal the dismissals. In fact, he concedes that one of the orders was "moot." (Compl. at 12). However, Defendant Linder also allegedly interfered with Plaintiff's personal mail. Plaintiff claims to have never received his November or December issues of the "American's Sovereign Bulletin." (See id).

The Complaint further alleges that Deputy Warden Philbin transferred Plaintiff to a less desirable dorm in response to Plaintiff's filing a "petition for writ of mandamus" against a prison administrative assistant, Gail Knowles. The Complaint then explains that, two days after he received notice that this petition had been served, Deputy Warden Philbin ordered that Plaintiff be moved from the "honor dorm" to the "thunder dorm" (a.k.a. "gang-bang dorm") and that Plaintiff be terminated from his job as a teacher's aid at the prison. (Id. at 15). At that time, Philbin allegedly told Plaintiff that he was being transferred because his "criminal history" as a "child molester" prevented him from being housed in the "honor dorm." (Id. at 16.) However, other prisoners told Plaintiff that Warden Philbin *really* moved him because of the civil action Plaintiff filed and that Philbin had even put a "hit" out on him. Plaintiff further alleges that Philbin's proffered excuse for his transfer was not believable, as both of the "honor dorms" (and even the "faith based dorm") are "filled with child molesters." (Id. at 17).

A week later, Plaintiff filed a grievance about his transfer. The grievance was reviewed and denied by Defendant Philbin. Plaintiff then filed a grievance about the denial. The next day, "CERT officers" transferred Plaintiff to the "hole . . . under the guise of 'involuntary protective custody.'" (Id. at 20). Plaintiff grieved this transfer as well, and this grievance was also denied. Shortly thereafter, Plaintiff received notice from the Lowndes County Clerk of Court that he could

not proceed with his petition for writ of mandamus against Gail Knowles until he completed the forms required by O.C.G.A. § 9-10-14.[1] Plaintiff believes that "the Warden" contacted the clerk and had her find "a way to stop the mandamus." (Compl. at 22).

Plaintiff has now filed the present suit seeking (1) a "declaration" that Defendants have violated his constitutional rights; (2) preliminary and permanent injunctions preventing Defendants from delaying the delivery of his mail and harassing Plaintiff for protected conduct; (3) an award of compensatory damages in the amount of $100 per day that he was kept in the segregation unit; and (4) punitive damages and costs. (Id. at 26).

### A. Claims against Defendant Deputy Warden Calvin Orr & Officer Rizer/Anderson

In his Complaint, Plaintiff names both Deputy Warden Calvin Orr and Officer "Rizer/Anderson" as parties to this action. However, Plaintiff makes no allegations against these parties in the body of his Complaint. It is, of course, well settled that a district court may dismiss a defendant if a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that connect him with an alleged constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980). It is thus **RECOMMENDED** that Deputy Warden Calvin Orr and Officer Rizer/Anderson be **DISMISSED** for this reason. See id.

### B. Claims against Defendant William Danforth

Plaintiff's Complaint also names Warden Danforth as a Defendant. The Complaint alleges that Warden Danforth failed to respond to a letter Plaintiff wrote about the alleged interference with his incoming mail. (See Compl. at 10). Plaintiff may have also asserted a claim against Warden Danforth based upon the "Warden's" alleged interference with his civil suit against Gail Knowles.

Neither of these allegations support a claim against Warden Danforth. A prison warden may

---

[1] See O.C.G.A. § 9-10-14(b) ("No clerk of any court shall accept for filing any action by an inmate of a state or local penal or correctional institution against the state or a local government or against any agency or officer of state or local government unless the complaint or other initial pleading is on a form or forms promulgated by the Administrative Office of the Courts and such form or forms are appropriately and legibly completed. . . .").

not be held liable for damages based merely on his failure to respond to an inmate's letter of complaint, see Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982), and Plaintiff's allegation that Warden Danforth interfered with this civil action is wholly speculative, based on nothing more than Plaintiff's suspicion or paranoia.  Such allegations do not raise the "right to relief above the speculative level" or otherwise create "a reasonable expectation that discovery will reveal evidence" supporting a claim against this Defendant.  Twombly, 550 U.S. at 555-56.  It is thus **RECOMMENDED** that Defendant Warden Danforth be **DISMISSED** from this action. See id.; 28 U.S.C. § 1915A(b)(1).

    C. Claims against Defendant Cecilia Linder

Plaintiff's Complaint also appears to state a First Amendment claim against Defendant Cecilia Linder, a mail officer, based on her alleged interference with his legal and personal mail. Interference with legal mail does implicate "a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." Corker v. Cannon, No. 8:08-CV-564-T-27TBM, 2008 WL 1847304, at *2 (M.D. Fla. April 24, 2008) (quoting Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)).

To succeed on a First Amendment "access-to-courts" claim, however, a prisoner "must show actual injury in the pursuit of specific types of non-frivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. (citation omitted).

Though, in this case, Plaintiff lists a litany of delayed letters, he does not allege that his criminal or civil cases were in fact injured by these delays.  The Complaint instead suggests that Plaintiff suffered no harm.  The Complaint alleges that Plaintiff received two state court orders in the mail, each post-marked a week prior to delivery.  The first was an order dismissing Plaintiff's petition for a writ of mandamus against the Houston County Clerk of Court, and the second was a

dismissal of a similar petition against Houston County Superior Court Judge George Nunn. Plaintiff did not wish to appeal these orders and alleges that one was actually "moot." (Compl. at 12).

Therefore, because Plaintiff has failed to allege that the delay in delivery of his legal mail impeded him from pursuing a non-frivolous direct or collateral attack on a sentence or a challenge to the conditions of his confinement, he has not stated a First Amendment "access-to-courts" claim. See Corker, 2008 WL 1847304 at *2. It is accordingly **RECOMMENDED** that any such claim be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff's allegations against Linder, however, may still support a First Amendment "free speech" claim. See O'Connor v. Carnahan, no. 3:09cv224/WS/EMT, 2012 WL 2201522 at * 15 (N.D. Fla. March 27, 2012). The First Amendment protects a prisoner's general "right to send and receive mail." Corker, 2008 WL 1847304 at *2 (citing Al- Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir.2008)). "The First Amendment also protects the right to receive and possess newspapers and similar publications." O'Conner, 2012 WL 2201522 at * 15 (citing Beard v. Banks, 548 U.S. 521, 543, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (J. Stevens, dissenting)). Though "prison security is a sufficiently important governmental interest to justify limitations on a prisoner's [F]irst [A]mendment rights," Gaines v.. Lane, 790 F.2d 1299, 1304 (7th Cir.1986), this general security interest will not justify a regular pattern and practice of mail interference. See Rowe v. Shake, 196 F.3d 778, 782 (7th Cir.1999). A prisoner's rights may therefore be violated when prison officials "regularly and unjustifiably interfere with" his incoming mail. Id. (quoting Davis v. Goord, 320 F.3d 346, 351 (2d Cir.2003)).

Here, Plaintiff's allegations plainly suggest that Defendant Linder "regularly and unjustifiably" interfered with the delivery of his incoming mail. Thus, even though it is not clear that the alleged delays posed a substantial burden on Plaintiff's First Amendment rights, the undersigned will allow this claim to go forward. At this early stage in the litigation, the undersigned cannot yet determine how Defendant Linder will justify or explain the alleged delay of Plaintiff's incoming mail. See Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996).

D.  Claims Against Defendant Ted Philbin

Plaintiff's Complaint alleges that Deputy Warden Philbin transferred Plaintiff to an undesirable dorm in retaliation for a civil action Plaintiff filed against an administrative assistant at the prison.  Plaintiff also alleges that Philbin then transferred him to the segregation unit, i.e., the "hole," after Plaintiff filed grievances challenging Philbin's motive for the first transfer.

Under the First Amendment, a prison official may not retaliate against an inmate for exercising the right of free speech.  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).  Thus, "[e]ven though a prisoner does not have a liberty interest in not being transferred to another [location], he may state a retaliation claim by alleging that he was transferred due to his filing of a grievance or lawsuit concerning his conditions of his confinement." Jemison v. Wise, 386 F. App'x 961, 964 (11th Cir. 2010).   To establish such a claim, a prisoner must show a causal connection between his protected conduct and the prison official's action in having him transferred. Id. at 964-65; Farrow, 320 F.3d at 1248-49.  "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." Jemison, 386 Fed. Appx. at 965.

Based on the allegations in the Complaint, the Court finds that Plaintiff has sufficiently plead a causal connection.  The Complaint alleges that Defendant Philbin transferred Plaintiff to the "thunder dorm" within two days of Plaintiff's petition being served and that Philbin then ordered that Plaintiff be taken to the "hole" for "involuntary protective custody" the day after Plaintiff filed a grievance against him.  Plaintiff's Complaint also suggests that discovery may reveal other evidence supporting his claim.  The undersigned will accordingly allow this claim to go forward for further factual development.  See Johnson v. Bowers,  2006 WL 3069703 at *2 (S.D. Ill. October 26, 2006) ("Specifying the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation.") (citing Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002)).

F. Claim against Defendant Sherman Maine

Plaintiff, however, has not sufficiently stated a retaliation claim against Defendant Sherman Maine.  Plaintiff's only allegation against Sherman Maine is that he was somehow involved in

7

executing Plaintiff's transfer to the segregation unit. The Complaint does not contain any allegations suggesting that Defendant Maine was aware of Plaintiff's protected conduct or that he would otherwise have any motive to retaliate against Plaintiff. Thus, because Plaintiff's allegations do not create "a reasonable expectation that discovery will reveal evidence" supporting a claim against this Defendant, Twombly, 550 U.S. at 555-56, the undersigned **RECOMMENDS** that Defendant Sherman Maine be **DISMISSED**. See id.; 28 U.S.C. § 1915A(b)(1).

G. Claims for Injunctive Relief

Plaintiff's final claims appear to be for injunctive relief. As noted above, Plaintiff asks that the district court enter an order preventing Defendants from delaying the delivery of his mail and harassing Plaintiff for exercising his right to free speech. Plaintiff has thus essentially requested that the Court enjoin Defendants from engaging in unlawful conduct.

This relief is unavailable. The district court cannot simply issue a general injunction barring prison officials from violating the law at some point in the future. See SEC v. Smyth, 420 F.3d 1225, 1233 (11th Cir. 2005) ("This circuit has repeatedly held that 'obey the law' injunctions are unenforceable."); Payne v. Travenol Lab., Inc., 565 F.2d 895, 898 (11th Cir. 1978) ("'[O]bey the law' injunctions cannot be sustained."); Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999). Moreover, Plaintiff's request is likely moot. Plaintiff recently provided the Court with notice of a change in his address and is apparently no longer incarcerated at Valdosta State Prison. Under established law in this Circuit, a prisoner's claim for injunctive relief is mooted by his transfer to another prison. Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985).

It is therefore **RECOMMENDED** that Plaintiff's claims for injunctive relief be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). To the extent Plaintiff has moved for a

preliminary injunction, the motion is **DENIED**.

## CONCLUSION

Having now conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A(a), the undersigned finds that the allegations, when read in a light most favorable to the Plaintiff and liberally construed in his favor, may support a claim for relief against Defendants Cecilia Linder and Deputy Warden Ted Philbin. It is thus **ORDERED** that service be made on these two Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1915, and the P.L.R.A. Defendants are reminded of their duty to avoid unnecessary service expenses and of the possible imposition of expenses for failure to waive service pursuant to Federal of Civil Procedure Rule 4(d).

It is **RECOMMENDED**, however, that all other claims and Defendants be **DISMISSED** from this action, without prejudice, for failure to state a claim. See 28 U.S.C. §1915A(b)(1). Plaintiff may serve and file written objections to this Recommendation with the district judge to whom this case is assigned within fourteen (14) days after being served a copy of this Order. 28 U.S.C. § 636(b)(1).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall at all times keep the clerk of this court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings filed herein.

## DUTY TO PROSECUTE ACTION

Plaintiff is advised that he must diligently prosecute his complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a <u>certificate of service</u> indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the defendants from whom discovery is sought by the plaintiff. The defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the FEDERAL RULES OF CIVIL PROCEDURE. The deposition of the plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

**IT IS HEREBY ORDERED** that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendants and granted by the court. This 90-day period shall run separately as to each plaintiff and each defendant beginning on

the date of filing of each defendant's answer or dispositive motion (whichever comes first).  The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.  The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the court in the absence of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed by the court.

## DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee

is paid in full, provided the amount in the account exceeds $10.00. Collection of monthly payments from plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from the plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event plaintiff is released from custody and fails to remit payments. In addition, plaintiff's complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED**, this 24th day of September, 2012.

*s/THOMAS Q. LANGSTAFF*
UNITED STATES MAGISTRATE JUDGE

jlr